January 17, 2008

The Honorable Eddie Lucio, Jr.
Chair, Committee on International
   Relations and Trade
Texas State Senate
Post Office Box 12068
Austin, Texas 78711

Opinion No. GA-0595

Re: Applicability of the nepotism statutes, Government Code chapter 573, to an individual employed by the City of Pharr (RQ-0608-GA)

Dear Senator Lucio:

You ask several questions about applying the nepotism statutes, Government Code chapter 573, to the City of Pharr's employment of a particular individual.[1] Your questions arise from the following fact situation, as relayed to you by the city's mayor:

> [A] member of the city's governing board of commissioners recommended to the city manager that a particular woman be hired for a city job. The woman was not at that time married to the commissioner's son, but before being hired by the city gave birth to the child of the commissioner's son. A city department head and the city manager subsequently hired the woman as a clerk and, after the employment began, the woman and the commissioner's son married.

Request Letter, *supra* note 1, at 1; *see also* Ryan Holeywell, *Questions of nepotism raised in Pharr*, THE MONITOR (Aug. 16, 2007), *available at* http://www.the monitor.com (last visited Jan. 8, 2008).

You specifically ask:

> (1) Did the birth of a child whose father is the son of a city commissioner create a relationship by affinity between the commissioner and the child's mother such that employment of the mother by the city violates Chapter 573, Government Code?

---

[1]*See* Letter from Honorable Eddie Lucio, Jr., Chair, Committee on International Relations and Trade, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas (July 18, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

    (2) If a relationship subject to Chapter 573, Government Code, existed between the commissioner and the woman, did the city's initial decision to employ the woman, which was not made by the board of commissioners, violate Chapter 573?

    (3) Does the subsequent marriage of the woman to the commissioner's son prohibit the continued employment of the woman by the city?

    (4) Does the continuous employment exception to the nepotism laws apply if a relationship by affinity is created after a public official takes office?

Request Letter, *supra* note 1, at 2–3.

  Chapter 573 of the Government Code generally prohibits nepotism by public officials, including municipal officers. *See* TEX. GOV'T CODE ANN. §§ 573.001(3), .041 (Vernon 2004). Under section 573.041, a "public official may not appoint, confirm the appointment of, or vote" to appoint or confirm the appointment of an individual to a position that is "compensated from public funds" if "the individual is related to the public official within" the third degree by consanguinity or within the second degree by affinity. *Id.* § 573.041(1); *see id.* § 573.002 (setting out the degrees of relationship to which chapter 573 applies). Consanguinity refers to relationships by blood, including adoption, and is calculated by counting the number of generations that separate two individuals. *See id.* §§ 573.022, .023(a). Affinity refers to relationships by marriage and is generally calculated by determining the degree of the underlying consanguine relationship. *See id.* §§ 573.024(a), .025(a).

  All of the issues you raise can be resolved by answering your second question: Even assuming that a relationship by affinity existed between the commissioner and the woman appointed by the city manager, does chapter 573 apply to her employment and retention by the City of Pharr? *See* Request Letter, *supra* note 1, at 2.

  Under a 1981 decision of the court of civil appeals, *Pena v. Rio Grande City Consolidated Independent School District*, the nepotism statute applies to officers who have the "exclusive right and sole legal authority to appoint or employ" personnel under the statute. *Pena v. Rio Grande City Consol. Indep. Sch. Dist.*, 616 S.W.2d 658, 659–60 (Tex. Civ. App.—Eastland 1981, no writ). An officer with statutory authority to appoint or employ personnel does not avoid the application of the nepotism statute by delegating authority to an officer without such statutory authority. *See id.* at 660.

  Citing *Pena* and attorney general opinions premised upon *Pena*, this office stated in 2004 that a home-rule municipality's governing board avoided the application of section 573.041 to board members' relatives if the board had, by charter, delegated "full and final appointing authority" and had not "reserve[d] any authority to the governing body." Tex. Att'y Gen. Op. No. GA-0226 (2004) at 3. Thus, for example, the nepotism statutes did not apply to a city manager's hiring of individuals

related to city commissioners where the home-rule municipality's charter delegated to the city manager sole power to appoint and remove all officers and employees in the administrative service of the city (with the exception of the city attorney) and expressly prohibited the city commission from taking any part in the appointments. *See id.*; *see also* Tex. Att'y Gen. Op. No. O-5274 (1943) at 1–3, 10.

The City of Pharr is a home-rule municipality. *See* TEXAS ALMANAC (2006–2007) at 453, 461; TEXAS MUNICIPAL LEAGUE, TEXAS CITY OFFICIALS DIRECTORY AND BUYER'S GUIDE (2005–2006) at 100. According to your letter, the city charter deems the city manager to be the city's "chief administrative and executive officer" and provides the city manager with exclusive power to appoint city employees below the department-head level:

> [The city manager] shall appoint, subject to consultation with the Board of Commissioners, all department heads, and without such consultation all City employees and appointive administrative officers provided for by or under this Charter, except as otherwise provided by law, this Charter or personnel rules adopted pursuant to this charter . . . .[2]

Request Letter, *supra* note 1, at 1 (quoting Pharr City Charter art. IV, § 1(a), (b)(2)) (footnote added). As you describe it, "the Pharr city charter grants the city manager the authority to hire city employees below the level of department head without the approval or involvement of the board of commissioners." Request Letter, *supra* note 1, at 3. You further explain that, under the City of Pharr's charter, the board of commissioners does not appoint, confirm, or vote to appoint or confirm any employees other than department heads. *See id.* Because this office ordinarily does not construe city charters, this opinion is premised on your characterization of it. *See* Tex. Att'y Gen. Op. No. GA-0529 (2007) at 1.

The city manager hired the woman about whom you ask to fill a clerk's position, and your letter indicates that the clerk's position is not a department head's position. *See* Request Letter, *supra* note 1, at 1, 3. Consequently, the city charter, as you describe it, required the city manager to appoint the clerk without the board of commissioners' approval or involvement.[3] *See id.* at 3.

Whether in fact the city charter delegates to the city manager "full and final appointing authority" and does not "reserve any authority to the governing body" is generally a question for the appropriate municipal officials to answer. Tex. Att'y Gen. Op. No. GA-0226 (2004) at 3. In these circumstances, however, and assuming that you accurately characterize the City of Pharr's charter,

---

[2]We assume that no other provision of the city charter or any city personnel rules abrogate the city manager's appointing authority under article IV, section 1(b)(2) of the Pharr City Charter.

[3]Your letter suggests that "[a] city department head and the city manager" hired the woman. Request Letter, *supra* note 1, at 1. The department head's role in the hiring is irrelevant to the nepotism analysis, assuming that the department head exercises no delegated authority in the hiring process under the city charter.

chapter 573 does not apply to the city manager's hiring of an individual who is related to a city commissioner to a position below the department-head level.[4]

Because this conclusion resolves the situation, we need not answer your remaining questions.

---

[4]We assume for purposes of this opinion that the commissioner's daughter-in-law is not related to the city manager within the third degree by consanguinity or within the second degree by affinity. *See* TEX. GOV'T CODE ANN. § 573.002 (Vernon 2004).

### S U M M A R Y

The charter of the City of Pharr, a home-rule municipality, delegates to the city manager the power to appoint individuals to positions below the department-head level without consulting the municipal governing board. If the charter provides the city manager with full and final appointing authority to appoint individuals to such positions and reserves no authority for the city's governing body in these appointments, the city manager may appoint an individual who is related to a city commissioner, but who is not related to the city manager, without contravening the nepotism statutes, Government Code chapter 573.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee